[No. G004909. Fourth Dist., Div. Three. Jan. 29, 1988.]

In re FRANKIE J., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
FRANKIE J., Defendant and Appellant.

COUNSEL

Ronald Y. Butler, Public Defender, Carol C. Holmes, Chief Deputy Public Defender, Frank Scanlon, Assistant Public Defender, Thomas Havlena, Holly Steenbergen and J. Pamela Boyd, Deputy Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael D. Wellington and Carl H. Horst, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SONENSHINE, Acting P. J.—Frankie J. contends a condition of probation prohibiting his possession of weapons of any description was improper. He alleges the condition was unrelated to the facts of his case or his

background. He also asserts the court, and not the probation officer, should have selected the terms and conditions of probation.

I

On January 4, 1985, two male assailants severely beat, raped, and sodomized Carolyn L. They also forced her to orally copulate them. A petition charging appellant with these crimes was filed January 14. The juvenile court, on April 16, found appellant committed rape (Pen. Code, § 261, subd. (2): two counts), rape by a foreign object (Pen. Code, § 289: one count) and oral copulation (Pen. Code, § 288a: two counts).[1] He was removed from his parents' custody and placed in Joplin Youth Center for 16 months. Various conditions of probation were orally imposed by the court.

In November, appellant escaped from Joplin. A petition was filed alleging the escape (Welf. & Inst. Code, § 871) and appellant admitted the allegation. He received 60 days consecutive to his earlier commitment. The court reinstated the previously imposed probationary conditions and further ordered: "[O]n termination of the commitment, the minor will be released to the custody of his father on the usual terms and conditions."

Upon completion of his commitment on July 2, 1986, appellant was released and under the direction of his probation officer, appellant signed a preprinted form entitled "Terms and Conditions of Probation." Condition No. 1 required that he report to his probation officer. No objection is raised to that condition although it, too, was not orally discussed by the court. Condition No. 3 required Frankie J. to "obey all laws." Frankie J.'s possession of a handgun, without the written consent of his parents, also violated this provision. (Pen. Code, § 12021.5.) It is apparent from the testimony of Frankie J.'s stepmother at the violation hearing that he did not have her permission to possess the handgun.[2] Condition No. 10 provides: "You are not to have any weapons of any description, including firearms, nunchucks or martial arts weaponry, and knives of any kind, in your possession while you are on probation, or involve [your]self in activities in which weapons are used, i.e. hunting, target shooting." None of these conditions were previously orally imposed. Other terms which had been orally imposed by the court, but which were not part of the preprinted form, were added by the probation officer. These terms prohibited association with any gang,

---

[1] On the date of the offense, appellant was four months short of his thirteenth birthday. His accomplice was 20 years old.

[2] She testified she did not know how the handgun got inside her house. When it was discovered, she had it placed in the trunk of her car and called Frankie J.'s probation officer. She told him she had found the gun beneath Frankie J.'s bed.

especially the Fifth Street gang, participation in gang activities and contact with the victim or appellant's codefendant.

On September 16, 1986, a petition was filed alleging appellant had violated the terms and conditions of his probation by failing to report to his probation officer on two occasions (condition No. 1) and by possessing a dangerous weapon, a handgun (condition No. 10). The court found the allegations to be true and committed appellant to the California Youth Authority.

## II

■ Frankie J. asserts the weapons restriction is invalid because it was not reasonably related to the facts of his case or his background. We disagree.

Section 730 of the Welfare and Institutions Code authorizes courts to establish conditions of probation in juvenile cases. It provides in part: "The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." ■ A condition of probation will be considered invalid if it (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].)

Because of its rehabilitative function, the juvenile court has broad discretion when formulating conditions of probation. "A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court." (*In re Todd L.* (1980) 113 Cal.App.3d 14, 19 [169 Cal.Rptr. 625].) "[I]n planning the conditions of appellant's supervision, the juvenile court must consider not only the circumstances of the crime but also the minor's entire social history. [Citations.]" (*Id.,* at p. 20.)

■ Applying the *Lent* and *Todd* criteria, and from our own careful scrutiny of the record, we conclude the weapons restriction was appropriate. Although no weapon was seen by or used upon the victim, there is substantial evidence the use of a weapon was contemplated. Frankie J.'s codefendant told the victim they were going to kill her, and Frankie J., at

his codefendant's direction, left to obtain a knife.[3] But for the fortuitous escape of the victim, Frankie J. would doubtless have returned with a knife. These facts are sufficient to warrant the weapons restriction. It "bears a reasonable relationship to the crime he committed and to preventing future criminality." (*In re Todd L., supra,* 113 Cal.App.3d 14, 21.)[4]

### III

██ Frankie J. also contends the trial court improperly delegated its decisionmaking power to the probation officer in the selection of the "usual terms and conditions" of probation. We disagree. At Frankie J.'s recommitment, the court imposed specific terms and conditions of probation. In addition, the court ordered Frankie J. released to the custody of his father on "the usual terms and conditions."

██ Where, as here, the minor/defendant is represented by counsel at the time the court uses a short-cut phrase, such as "usual terms and conditions," "violate no law," and "obey all laws," it is incumbent upon the minor/defendant or his counsel to object and to request clarification. (*People* v. *Walmsley* (1985) 168 Cal.App.3d 636, 640 [214 Cal.Rptr. 170].)[5] ██ Frankie J. was represented by a seasoned defense attorney who undoubtedly was familiar with the "usual" terms and conditions of probation which were enumerated on the preprinted form. No objection was lodged concerning any of the terms or conditions until after Frankie J. violated two of the provisions.[6] Both were part of the preprinted form.[7]

██ Frankie J. does not claim he was unaware of the weapons condition but asserts it should have been orally communicated to him in court by the

---

[3] When the codefendant first grabbed the victim, he said, "We want to kill you." After being beaten, raped, sodomized and forced to orally copulate both assailants, the victim heard the older male say to Frankie J., "Give me the knife." Frankie J. replied, "I don't have it." The older assailant stated, "Go home and get it." Frankie J. departed on his bicycle.

[4] There is an additional factor which would also justify the weapons restriction. Gang activities and weapon possession go hand-in-hand. The court was aware of Frankie J.'s association with gang members and specifically ordered him not to associate with them or to participate in gang activities. Frankie J. admitted his possession of the handgun was a direct result of his participation in gang activities.

[5] It is not necessary for a defendant to reject probation as a prerequisite to challenging the validity of a condition of probation. (*In re Bushman* (1970) 1 Cal.3d 767, 776 [83 Cal.Rptr. 375, 463 P.2d 727].) Habeas corpus "may be used to review the validity of a sentence or order of probation that can be corrected without the redetermination of any questions of fact. [Citations.]" (*Ibid.;* see also *In re Martinez* (1978) 86 Cal.App.3d 577 [150 Cal.Rptr. 366].) Frankie J. did not seek habeas relief from any condition of probation.

[6] Our review of the record has disclosed no objection to the use of the standard preprinted probation form.

[7] Frankie J.'s probation officer testified the preprinted form, entitled "Terms and Conditions of Probation," is the usual form used by the probation department. He did not add conditions 1 or 10; they are part of the preprinted form.

judge. This contention was specifically addressed and rejected in *People* v. *Thrash* (1978) 80 Cal.App.3d 898 [146 Cal.Rptr. 32]. "These conditions [of probation] need not be spelled out in great detail in court as long as the defendant knows what they are; to require recital in court is unnecessary in view of the fact the probation conditions are spelled out in detail on the probation order and the probationer has a probation officer who can explain to him the contents of the order." (*Id.,* at pp. 901-902.) The probation officer went over each condition of probation with Frankie J. and had him initial those applicable. Frankie J. has failed to meet his burden of affirmatively showing error on the record. (*Kearl* v. *Board of Medical Quality Assurance* (1986) 189 Cal.App.3d 1040, 1051.)

The order revoking probation and committing Frankie J. to the California Youth Authority is affirmed.

Crosby, J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 4, 1988.